UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

Warman et al.,

                    Plaintiffs,

                                                    DECISION AND ORDER
          v.                                        14-CV-700(LJV)

The Law Office of Daniel M. Slane et al.,

                    Defendants.

───────────────────────────────

## INTRODUCTION

On August 25, 2014, the plaintiffs filed a complaint alleging violations of the Fair

Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*  The defendants

failed to appear and defend this action, and the time to do so expired.  As a result, the

plaintiffs asked the Clerk of Court to enter a default, which accordingly was entered on

February 25, 2015.  Docket Items 5, 7-8.  Now before this Court is the plaintiffs' motion

for default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure.

After hearing oral argument on January 20, 2017, and considering the plaintiffs'

submissions dated February 24, 2017, this Court GRANTS the plaintiffs' motion.

## BACKGROUND

The plaintiffs in this case[1] incurred consumer debt that the defendants, The Law

Office of Daniel M. Slane ("Slane") and United Recovery Worldwide, LLC, sought to

collect.  Slane formerly operated as a collection agency and was a "debt collector"

within the meaning of the FDCPA.  Complaint, Docket Item 1 ¶¶ 17-18, 151.  The

defendants merged on June 2, 2014; Slane no longer exists and United Recovery

───────────────

[1] Although there originally were 13 plaintiffs in this action, only 10 remain.

Worldwide, the surviving company, assumed all liability for the conduct committed by Slane prior to the merger.[2]  Docket Item 1-1.

The complaint alleges that the defendants violated the FDCPA in connection with each of the plaintiffs as follows:

*Michael Warman.*  In seeking to collect Warman's debt, Slane called him and threatened to take legal action if the debt was not paid immediately.  *Id.* ¶ 26.  The collector also falsely stated that Warman would automatically owe thousands of dollars if the lawsuit were filed.  *Id.* ¶ 27.  The coercion worked: Warman provided his bank account information to Slane.  *Id.* ¶ 28.

*Erin King.*  Starting in 2011, Slane tried to collect King's debt by calling her cellphone.  *Id.* ¶ 34.  In June 2011 and April 2013, King requested that the calls stop.  Docket Item 25 at 2; Docket Item 1 ¶ 37.  But the calls did not stop, and King continued to receive up to three calls per day.  Docket Item 1 ¶ 38.  Further, Slane threatened to file legal action against King and failed to send her written correspondence informing her of the right to dispute her debt.  *Id.* ¶¶ 39-40.

*Timothy Lawson.*  Slane attempted to collect Lawson's debt by repeatedly calling him at work, as many as 30 times, even after Lawson told Slane that the contact was inconvenient and asked for it to stop.  *Id.* ¶¶ 74-76; Docket Item 12-5 ¶ 4.  Slane falsely told Lawson that it was a law firm, threatened to "ruin" Lawson's credit and financial future, and threatened to tell Lawson's family and employer that he owed the debt.  Docket Item 1 ¶¶ 77-79.

---

[2] Slane no longer exists but was the single entity acting during the period of alleged violations.  Because Slane and United Recovery Worldwide both are listed as defendants in this action, the Court refers to "defendants" in the plural.

*Summer Goff.*   Slane sought to collect Goff's debt through written correspondence.  *Id.* ¶ 85; Docket Item 1-2 at 2.  Because the letter, with the letterhead "The Law Office of Daniel Slane," did not state whether or not it was prepared or reviewed by an attorney, Goff assumed that he was being contacted by an attorney. Docket Item 1 ¶¶ 85-86; Docket Item 1-2 at 2.

*Mario Tucker.*   Slane tried to collect Tucker's debt by contacting him at his place of employment.  Docket Item 1 ¶¶ 93.  After Tucker asked that the calls stop, Slane persisted in contacting Tucker at work as many as 15 more times, even speaking with several coworkers about the purpose of the calls.  *Id.* ¶¶ 94-96; Docket Item 12-7 ¶ 4. Slane threatened to garnish Tucker's wages, contacted Tucker's mother and informed her of the debt without Tucker's consent, and withdrew money from Tucker's bank account after Tucker had revoked his permission for that withdrawal.  *Id.* ¶¶ 97-101, 103.

*Alex Davis.*   In attempting to collect Davis's debt, a Slane representative called Davis several times without informing him of the debt-collection purpose of those calls. *Id.* ¶¶ 110-11.  Slane also lied to Davis by threatening to issue a warrant for Davis's arrest and representing in a voicemail that Slane was a law firm rather than a collection agency.  *Id.* ¶¶ 112-13.  In the same voicemail, Davis was told that the matter could "result in civil or criminal charges being filed."  *Id.* ¶ 114.

*Rita Taylor.*   Slane sought to collect Taylor's debt by calling her workplace and disclosing to a coworker, without Taylor's consent, the purpose of the call.  *Id.* ¶¶ 120-21.

*Ronald Moore.*  Slane called Moore to collect Moore's debt, but Moore was not told the purpose of the call.  *Id.* ¶¶ 126-27.  When Moore explained to Slane that he had already paid his debt in full, Slane responded that it nevertheless would continue to seek payment until the debt was paid directly to Slane.  *Id.* ¶¶ 128-29.  Slane also failed to provide the requested proof that Moore's debt was valid and payable, did not tell Moore about his right to dispute his alleged obligation to pay the debt, and continued to call Moore in an effort to collect the purported debt.  *Id.* ¶¶ 130-32.

*Jarred Johnson.*  In attempting to collect Johnson's debt, Slane called Johnson several times.  *Id.* ¶ 137.  On one occasion, a Slane collector spoke with Johnson's wife and told her that Slane would be "filing a claim through Johnson's social security number."  *Id.* ¶¶ 139.  In a later call, a Slane representative did not tell Johnson that the purpose of the calls were to collect a debt.  But he did falsely threaten Johnson that a warrant would be issued and falsely told him that Daniel Slane could "practice in all 50 states."  *Id.* ¶ 140-42.

*William Welling.*  In October 2012, Welling paid his debt to Slane and requested proof of payment, which he never received.  *Id.* ¶¶ 147, 149.  In January 2014, a Slane collector orally confirmed that Welling's debt was paid and told Welling that he would receive a release-of-debt letter, which he never did.  *Id.* ¶¶ 148-49.   Instead, from January to June 2014, Slane called Welling numerous times seeking payment on the already-paid debt and providing misleading information.  *Id.* ¶ 150.  For example, Welling was told both that "payment made in 2012 was not the full amount" and that Slane had "never received a payment from [Welling]."  *Id.*

The plaintiffs allege that they suffered myriad negative consequences as a result of their contact with Slane and its collectors, including anger, emotional distress, frustration, anxiety, helplessness, embarrassment, and frustration.  *Id.* ¶¶ 6-9, 11-19.

## DISCUSSION

### A.  Default Judgment

To obtain default judgment, a party must secure a Clerk's Entry of Default by demonstrating, "by affidavit or otherwise," that the opposing party "has failed to plead or otherwise defend" the case.  Fed. R. Civ. P. 55(a).  Upon entry of default, the court accepts the complaint's factual allegations, except those relating to damages, as true, and draws all reasonable inferences in the moving party's favor.  *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir.2009); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir.1974)).  In considering whether to enter default judgment, the court determines whether the alleged facts state a valid claim for relief and has the discretion to require further proof of necessary facts.  *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (discussing Fed. R. Civ. P. 55(b)(2)).  As to damages, the court should take steps, including by hearing or referral when necessary, to establish their proper amount with reasonable certainty.  *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (discussing Fed. R. Civ. P. 55(b)(2)).

### B. FDCPA Claims

#### 1. Liability

The plaintiffs assert that the defendants violated numerous provisions of the FDCPA. These provisions prohibit certain communications designed to collect a debt, including those that are, without prior consent, made: at a time or place known to be inconvenient to the debtor; to someone other than the debtor or certain other persons designated by statute; in disregard of a written request to cease the communications; via telephone, in a harassing manner; in connection with false or misleading representations; through unfair or unconscionable means; or without sending sufficient written notice of a debt within five days of the initial communication. *See* 15 U.S.C. §§ 1692c-g.

The plaintiffs have alleged facts regarding the defendants' actions that are violations of the FDCPA. Taking the undisputed facts in the plaintiffs' complaint as true, the defendants' liability under the FDCPA therefore is established with respect to each of these plaintiffs.

#### 2. Damages

Although the plaintiffs initially sought judgment for actual and statutory damages, they now seek only statutory damages in this motion for default judgment. Docket Item 20 ("Notice of Withdrawal of Claims for Actual Damages"). Under the FDCPA, a court may award each plaintiff up to $1,000 in statutory damages. 15 U.S.C. § 1629k(b)(1). Proof that the statute was violated warrants damages, "although a court must then exercise its discretion to determine how much to award, up to the $1,000 ceiling." *Savino v. Comput. Credit Inc.*, 164 F.3d 81, 86 (2d Cir. 1998).

In calculating an appropriate statutory damages award, the district court considers relevant factors such as the frequency, persistence, nature, and intentionality of noncompliance by the debt collector.  15 U.S.C. § 1692k(b)(1).  Awards of the $1,000 statutory maximum are rare and are typically granted only in cases where a defendant's violations are "particularly egregious or intimidating."  *Carbin v. N. Resolution Grp., LLC*, 2013 WL 4779231, *2 (W.D.N.Y. Sept. 5, 2013) (quoting *Cordero v. Collection Co.*, 2012 WL 1118210, *2 (E.D.N.Y. Apr. 3, 2012)).

In examining the individual plaintiffs' cases, the Court finds that Lawson and Tucker experienced the most egregious conduct, having been contacted at work and threatened with seemingly real and scary consequences.  Although not to the same extent, Davis and Johnson also suffered from the threat of legal action by a Slane collector falsely representing to be an attorney.  Welling and Moore were contacted after they had already paid their debts.  King received calls that were less alarming but more numerous.  Finally, Warman, Goff, and Taylor were each only once contacted by Slane in a manner that was, simply, in violation of the FDCPA.  This varying conduct by Slane warrants the following awards to the plaintiffs:

- Timothy Lawson—$750;

- Mario Tucker—$750;

- Alex Davis—$500;

- Jarred Johnson—$500;

- William Welling—$500;

- Ronald Moore—$500;

- Erin King—$500;

- Michael Warman—$250;

- Summer Goff—$250;

- Rita Taylor—$250.

### 3. Attorneys' Fees and Costs

Under the FDCPA, the court has discretion to award reasonable attorneys' fees and costs to successful litigants. *See* 15 U.S.C. § 1692k(a)(3).  A court should consider case-specific variables in setting a reasonable hourly rate, which in turn should be used to calculate the "presumptively reasonable fee."  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty of Albany*, 493 F.3d 110 (2d Cir. 2007) *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008).  The hourly rates charged in the reviewing court's district are presumptively the rates that the court should use.  *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174-75 (2d Cir. 2009).  Therefore, this Court considers the prevailing market rate in the Western District of New York in determining a reasonable fee here.  *See Blum v. Stenson*, 465 U.S. 886, 896 n.11  (1984) (considering the market rate for "similar services by lawyers of reasonably comparable skill, experience, and reputation").

In response to an order of this Court, counsel for the plaintiffs have submitted time records indicating that 66.65 hours ($15,240) were expended by attorneys and paralegals in litigating the case.  Docket Items 24, 24-1.  The requested hourly rates for those attorneys break down as follows: Sergei Lemberg, Esq.—$300; Vlad Hirnyk, Esq.—$250; Alex Hornat, Esq.—$200; Joshua Markovits, Esq.—$200; and various paralegals—$100.  Docket Item 24 at 4.

Lemberg, the principal of the plaintiffs' law firm, has 15 years of legal experience, including in debt collection and consumer law. The other lawyers have less experience: Hirnyk has been practicing for five years, Hornat for three, and Markovits for one. The declaration drafted in support of the plaintiffs' motion for attorneys' fees does not indicate the level of experience of the paralegals who worked on the case.

This Court finds some of the requested hourly rates to be excessive when compared to the prevailing market rates in this district for FDCPA cases. *See Halecki v. Empire Portfolios, Inc.*, 952 F. Supp. 2d 519, 522 (W.D.N.Y. 2013) (awarding hourly rate of $250 for experienced attorney of 30 years and $140 for recently admitted attorney); *Hance v. Premier Recovery Grp., Inc.*, 2013 WL 85068, at *2 (W.D.N.Y. Jan. 7, 2013) (awarding hourly rate of $225 to attorney of over 20 years' experience); *Engler v. Atlantic Res. Mgmt., LLC*, 2012 WL 464728, at *5 (W.D.N.Y. Feb. 13, 2012); *Barrows v. Tri-Fin.*, 2009 WL 3672069, at *4 (setting rates in FDCPA case at $200 for experienced attorney, $125 for less experienced attorneys, and $80 for paralegal).

This Court finds, in light of such considerations as the level of skill required to perform the legal services in this case, the amount involved and the results obtained, and the experience and ability of the attorneys, that $275 for Lemberg, $225 for Hirnyk, $200 for Hornat, and $200 for Markovits are reasonable hourly rates for the attorneys. *See White v. Hoffman, Weinberg and O'Brien, LLC*, 2015 WL 1746160 (W.D.N.Y. Apr. 16, 2015) (awarding $250 for experienced attorneys, $175 for new attorney, and $75 for paralegal). Having received no indication of the experience of the respective paralegals who worked on this case, the Court finds that an hourly rate of $90 is appropriate for their services. *Douyon v. N.Y. Med. Health Care, P.C.*, 49 F. Supp. 3d 328, 348

(E.D.N.Y. 2014) ("In the Second Circuit, prevailing paralegal, law clerk and legal assistant rates have more recently been found to be anywhere from $70 to $100 per hour.").

Additionally, the Court finds that 66.65 hours of work—much of which was spent on drafting the complaint, affidavits, and motion for default judgment—is reasonable.  In calculating the time that the plaintiffs' attorneys reasonably spent working on this case, the Court bears in mind the larger-than-average pool of plaintiffs.  This requires significant coordination and work that might be excessive in a one-plaintiff default-judgment FDCPA action but that is reasonable in a case with ten plaintiffs.  *Cf. Dunn v. Advanced Credit Recovery Inc.*, 2012 WL 676350 (S.D.N.Y. Mar. 1, 2012) (finding 18.25 hours reasonable in default-judgment FDCPA case); *Coles v. Liberman, Michaels & Kelly, LLC*, 2011 WL 3176467, at *5 (W.D.N.Y. July 27, 2011) (reducing 29.1 requested hours to 15 hours for attorney's fees in default-judgment case, citing attorney's experience and standard submissions for FDCPA cases).

Using the respective hourly attorneys' fees reasonable for this district for 66.65 hours of work, the Court awards attorneys' fees to the plaintiffs in the amount of $13,696.  The Court further awards costs in the amount of $422, representing the $400 filing fee and $22 for mailing costs.

## C. TCPA Claim

### 1. Liability

Erin King also alleges that Slane communicated with her in a manner that violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* Docket Item 1 ¶¶ 172-82.  Under the TCPA, it is unlawful "for any person . . . to make

any call [other than for emergencies or with the recipient's prior express consent] using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number . . . ."  47 U.S.C. § 227(b)(1)(A)(iii).

According to the complaint, starting in June 2011, Slane contacted King through "an automatic telephone dialing system . . . [that employed] an artificial or prerecorded voice" instructing her to return the calls.  Docket Item 1 ¶¶ 34-35.  King maintains that she never gave her cellphone number or consent to be contacted, but that even if she had, Slane lacked consent to contact her after she told Slane to stop calling and sent written correspondence, mailed April 3, 2013, to that effect.  *Id.* ¶¶ 36-37.

King has alleged facts sufficient for the Court to find that the defendants violated the TCPA.  The defendants' liability under the Act therefore is established with respect to King.

### 2.  Damages

The TCPA allows an individual either "to recover the actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater."  47 U.S.C. § 227(b)(3)(B).  Further, a court may award treble damages if it finds "that the defendant willfully or knowingly violated" the law or the regulations enforcing it.  *Id.* § 227(b)(3).  King seeks statutory damages of $500 under the TCPA and treble damages for Slane's willful or knowing violations of the Act.  Docket Item 1 at 37.

On this motion for default judgment, the Court sought to establish King's damages award with reasonable certainty.  *See Transatlantic Marine*, 109 F.3d at 111. The plaintiff initially did not provide evidence—in the complaint, an affidavit, or any other

documentation—of the calls, the number of the calls, or the timeline of the calls.
Although the plaintiffs' memorandum of law in support of the motion for default judgment
suggested that King received 30 prerecorded calls to her cellphone without consent,
Docket Item 12-1 at 24, the plaintiff provided no evidence of that allegation.

Because awards under the TCPA are per violation, on February 14, 2017, the
Court ordered the plaintiff to provide additional documentation:

> With respect to damages sought in connection with Count III of the
> complaint, the plaintiff is directed to submit affidavits and/or supporting
> documentation indicating the timeline and quantity of phone calls received
> by Erin King, when/if consent to such calls was given or revoked, King's
> April 2013 demand to stop the calls, and any other information necessary
> to allow the Court to establish damages pursuant to 47 U.S.C.
> § 227(b)(3)(B) & (C) with reasonable certainty.

Docket Item 23.

In King's affidavit responding to that order, she stated that between 2011 and
2014 she received 30 calls to her cell phone, to which she never consented, containing
prerecorded messages from Slane.  *See* Docket Item 25.  This sworn affidavit
reasonably establishes 30 violations of the TCPA by Slane.  *See Echewaria v.
Diversified Consultants, Inc.*, 2014 WL 929275, at *7 (S.D.N.Y. Feb. 28, 2014)
(indicating that defendant bears burden of proving prior consent, an affirmative defense,
under TCPA).

King also swears in her affidavit that she twice asked Slane to stop calling: once
orally in June 2011 and again in writing in April 2013.  *Id.* at 2.  As the 2015 FCC Order
makes clear, either of these demands—written or oral—should have sufficed to stop the
calls.  *See* 2015 FCC Order ¶¶ 55, 64.  Before awarding treble damages for any willful
or knowing violations of the TCPA,  a court should have evidence that a defendant was

aware or should have been aware that it called an individual after he or she asked that the calls stop or that the defendant knew it was violating the TCPA but kept calling anyway. 47 U.S.C. § 227(b)(3). The court also should have at least a rough idea of the number of calls so made. Here, although this Court has not been given an estimate of the number of calls King received from Slane and collectors before and after her demands to cease the calls, the first of Slane's demands was made orally in 2011, the year when the calls began, and the second was made in April of 2013, the year before the calls stopped. Considering this, the Court finds that King is entitled to treble damages for 20 of the 30 calls. That is a conservative estimate of the number of calls after the 2011 request to cease, and this Court exercises its discretion to treble the award with respect to such calls. 47 U.S.C. § 227(b)(3) ("[T]he court may, *in its discretion*, increase the amount of the award . . . .") (emphasis added); Docket Item 1 at 7 ¶¶ 36-37.

## CONCLUSION

Accordingly, the plaintiffs' Motion for Default Judgment (Docket Item 12) is GRANTED in the amount of $39,750, representing  $4,750 in statutory damages to the plaintiffs under the FDCPA and $35,000 in statutory damages ($500 for each of 10 calls and $1,500 for each of 20 calls to King) under the TCPA. The damages awarded for the FDCPA violations are broken down by each plaintiff as follows: Lawson and Tucker each receive $750; Davis, Johnson, Welling, Moore, and King each receive $500; and Warman, Goff, and Taylor each receive $250. King receives the entirety of the TCPA damages. Additionally, the plaintiffs are awarded $14,118 in attorneys' fees and costs.

The Clerk of the Court is directed to close this case.


SO ORDERED.

Dated:    March 13, 2017
          Buffalo, New York

                              *s/Lawrence J. Vilardo*
                              LAWRENCE J. VILARDO
                              UNITED STATED DISTRICT JUDGE